UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARK EMIG and ALLISON EMIG,

                              Plaintiffs,

          -v-

ELECTROLUX HOME PRODUCTS INC.,
ELECTROLUX HOME PRODUCTS INC. D/B/A
FRIGIDAIRE ELECTROLUX HOME PRODUCTS
NORTH AMERICA, BEST BUY CO., INC., BEST
BUY CO., INC. D/B/A BEST BUY COMPANY OF
MINNESOTA,

                              Defendants.

---

Case No. 06-CV-4791 (KMK)

OPINION AND ORDER

Appearances:

John F. Scarzafava, Esq.
Scarzafava & Basdekis
Oneonta, New York
*Counsel for Plaintiff*

Robert P. Ianelli, Esq.
Fishkill, New York
*Counsel for Plaintiff*

George S. Hodges, Esq.
Paul E. Svensson, Esq.
Hodges, Walsh & Slater, L.L.P.
White Plains, New York
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Plaintiffs Mark Emig and Allison Emig ("Plaintiffs") filed this lawsuit against

Defendants Electrolux Home Products Inc., Electrolux Home Products Inc., d/b/a Frigidaire

Electrolux Home Products North America, Best Buy Co., Inc., and Best Buy Co, Inc., d/b/a Best

Buy Company of Minnesota (collectively, "Defendants"), alleging negligence, strict liability,

and breach of warranty, as well as a derivative claim for loss of consortium. On May 4, 2007, Defendants filed a Motion to Preclude Plaintiffs' Expert and a Motion for Summary Judgment. For reasons stated herein, Defendants' Motions are DENIED.

I. Background

A. Facts

Plaintiffs allege that on July 31, 2004, Plaintiff Mark Emig was seriously and permanently injured while assembling the freezer door handle on a refrigerator "designed, and/or manufactured, and/or sold, and/or distributed" by Defendants. (Compl. ¶ 12.) Plaintiffs claim that the injury occurred, at least in part, because the refrigerator came with inadequate warnings and instructions for the freezer door handle installation. (*Id.* ¶¶ 14, 16, 18, 20, 22, 24, 26, 28.) The refrigerator came with an instruction sheet for assembling the door handle, which was included in the polybag in which the door handle was packaged. Further, the user manual for the refrigerator contained additional instructions for the installation of the door handle.

Plaintiffs have proffered Bruce Gorsak ("Gorsak") as their expert engineer "to provide expert testimony solely on the issue of assembly instructions and warnings provided by [Defendant] relating to the installation of a refrigerator freezer door handle." (Defs.' Statement of Facts ¶¶ 1-2 ("Defs.' SOF"); Pls.' Statement of Facts ¶¶ 1-2 ("Pls.' SOF").) Gorsak holds a Bachelor's degree in Mechanical Engineering Technology, and identifies himself as a Vehicle and Industrial Engineer in his Curriculum Vitae. (Affirmation of Paul E. Svensson, Esq. ("Svensson Affirm."), Ex. C ("Gorsak's CV").) Gorsak's CV outlines his automotive, engineering, and industrial experience. Most recently, Gorsak has been employed as a Mechanical Engineer at American Technical Analysis & Assistance, Inc. (from June 30, 1996, to

present), and Robson Forensic, Inc., previously known as Robson Lapina, Inc. (from July 14, 2003, to November 15, 2006). For both of these jobs, Gorsak describes his duties as follows: "[to p]rovide technical investigations, analysis, reports, and testimony towards the resolution of commercial and personal injury litigation involving automotive, transportation vehicles, industrial equipment, and consumer products and failure analysis." (*Id*.) He also lists the various continuing education programs he has taken and the professional associations of which he is a member. (*Id*.)

In support of Plaintiffs' case, Gorsak prepared an expert report entitled, "Investigation of the Mark Emig Frigidaire Refrigerator Incident: Engineer's Report," dated December 7, 2004 ("the Gorsak Report"). The Gorsak Report states that the following information was available to Gorsak for his analysis: (1) Frigidaire Use and Care Manual; (2) Frigidaire "Installing Your Door Handles" instruction sheet (the instructions at issue); (3) Frigidaire "Consumers Tips" pages; (4) Frigidaire "To be removed by customer handling and set-up" sheet; and (5) Gorsak's site and equipment inspections on August 31, 2004, and November 22, 2004. (Gorsak Report 1.) From reading the Gorsak Report, it is clear that Gorsak also compared the Frigidaire instructions with instructions used by competitors and interviewed Plaintiff Mark Emig about how the accident occurred. (*Id*. 1-4.) Gorsak opined that Plaintiff, "follow[ing] the instructions in a foreseeable manner," was injured in the course of installing the freezer door when "he was pulling the handle upward and towards himself, [and] the handle unexpectedly separated from the freezer door [and struck his eye]." (*Id*. 2.) In the Gorsak Report, he also pointed out that the correct assembly instructions for the door handle were "buried" in the user manual for the refrigerator, "depriv[ing] Emig of the information he needed to safely assemble the product."

(*Id*. 3.)

Gorsak's report reached the following conclusions regarding the assembly instructions and Plaintiff Mark Emig's injury:

> a. The combination of component design and assembly instruction was defective because it was error provocative and was the cause of Emig's injury.
> b. Emig followed Frigidaire's instruction, which exposed him to the hazard and led him into the injury. . . .

(*Id*. 5.)[1]

During his deposition, Gorsak elaborated on what in particular was "error provocative" about the assembly instructions that came in the polybag with the door handle. (Dep. of Bruce Gorsak 179-80, 193-95 ("Gorsak Dep.").) He explained that the instruction sheet shows the handle straight up and down with the door, instead of telling the consumer to "offset" the handle or at least depicting the handle offset. The refrigerator user's manual – which contains what Gorsak describes as the "correct instruction" – does use the word "offset" in the first sentence of its installation instructions, but nothing in the instruction sheet that was included in the polybag with the door handle refers the consumer to review the refrigerator user's manual before beginning assembly. (Gorsak Report 3; Gorsak Dep. 194-95.) According to Gorsak, the use of the word "offset" or an illustration showing the handle offset in the assembly instructions "would have made a difference" and, in fact, "would have avoided the accident." (Gorsak Dep. 179-80.)

---

[1]Though the Gorsak Report includes conclusions regarding Defendants' failure to warn about the need for safety glasses, Plaintiffs have since abandoned their claims premised on the absence of safety glasses. (Gorsak Dep. 178 ("Mr. Scarzafana: It is hereby stipulated that the plaintiff does not intend to pursue an issue based upon the absence of safety glasses.").)

Gorsak performed two site and equipment inspections of the accident scene and refrigerator for the purpose of preparing his expert report. (Gorsak Report 1.) During his deposition, Gorsak explained what he did during these inspections. On August 31, 2004, Gorsak went to Plaintiffs' home and spoke to Plaintiff Mark Emig about how the accident occurred. (Gorsak Dep. 134-35.) When asked whether, during the inspection, he attempted to work with the handle using the assembly instructions, Gorsak testified that he "mock[ed] it but [did] not . . . put it on[, because he] didn't want to damage the handle." (*Id*. at 155.) In November 2004, the second of the two inspections took place at Plaintiffs' home, during which Gorsak did not "do anything with respect to working with the handle while [he was] there," but he did "ask[ Plaintiff Mark Emig] to show [him] what [Plaintiff] did while [Plaintiff] was trying to put the handle on." (*Id*. at 155-56.)

Given the instruction sheet's depiction of the handle held straight up and down, as opposed to offset, and its alleged failure to use the word "offset" or at least refer the consumer to the user's manual, Gorsak found Plaintiff Mark Emig's interpretation of the instructions, and therefore injury, to be foreseeable. (*Id*. 179-80; Gorsak Report 2.)

B. Procedural History

Plaintiffs filed their Complaint on June 21, 2006.[2] On March 10, 2007, Gorsak testified in a deposition, and discovery was completed in April 2007. Defendants filed the instant Motion on May 4, 2007, seeking to preclude Gorsak from testifying as an expert in Plaintiffs' case on the grounds that: (1) Gorsak lacks the qualifications necessary to render an expert opinion in

---

[2]This case was originally assigned to Judge Colleen McMahon. On August 6, 2007, the case was reassigned to this Court.

this case (Defs.' Mem. of Law 4-7 ("Defs.' Mem.")), and (2) Gorsak's opinion is based upon unreliable methodology (*id.* 7-11). In the event that the Court agrees with Defendants and precludes Plaintiffs' expert, Defendants further moved the Court for summary judgment. (*Id.* 11.) The Court held oral argument on July 30, 2008.

## II. Discussion

### A. Standard of Review – Motion to Preclude Expert

Federal Rule of Evidence 702 ("Rule 702") "embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005); *accord Alfa Corp. v. OAO Alfa Bank*, 475 F. Supp. 2d 357, 360 (S.D.N.Y. 2007) ("'[T]he rejection of expert testimony is the exception rather than the rule.'" (quoting Fed. R. Evid. 702 advisory committee's note)). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Before permitting a person to testify as an "expert" under Rule 702, a district court must make the following determinations: "(1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact." *Humphrey v. Diamant Boart, Inc.*, 556 F. Supp. 2d 167, 174 (E.D.N.Y. 2008) (citing *Nimely*, 414 F.3d at 396-97). Finally, like all other evidence, expert testimony is also subject to scrutiny under Federal Rule of Evidence 403. *See Nimely*, 414 F.3d at 397. The party who proffers an expert has the "burden

of proving each element necessary to the admissibility of that expert's testimony and report" by a preponderance of the evidence. *In re Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007).

B. Analysis

1. Gorsak's Affidavit

In opposition to Defendants' Motion to Preclude, Gorsak submitted an affidavit that elaborates on his experience, his qualifications, the methodology he used to evaluate the instructions at issue, and the conclusions he reached. Defendants urge the Court to largely disregard Gorsak's Affidavit because, according to Defendants, it contains information that contradicts Gorsak's deposition testimony and his report, and it provides information that was not in his report.[3] (Defs.' Reply Affirmation ¶¶ 5-6, 9-24, 42 ("Defs.' Reply").)

The Court, however, has thoroughly reviewed Gorsak's Affidavit and, as explained below, finds it to be largely consistent with his deposition testimony and expert report. However, to the extent that the Court decides that the Affidavit contains opinions and

_____

[3]The expert report must contain: "(i) a *complete statement* of all opinions the witness will express and the basis and reasons for them; [and] (ii) the data or other information considered by the witness in forming them . . . ." Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

Pursuant to Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information . . . as required by Rule 26(a) . . . , the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." Faced with such a failure, the Court may impose sanctions, including, but not limited to, those listed in Rule 37(b)(2)(i)-(iv). *See* Fed. R. Civ. P. 37(c)(1)(C).

In considering whether to exclude evidence pursuant to Rule 37(c), the courts consider the following: "(1) the party's explanation for the delay in advancing the new evidence; (2) the importance of the precluded evidence; (3) the prejudice suffered by the opposing party; and (4) the possibility of a continuance." *Point Prods. A.G. v. Sony Music Entm't*, No. 93-CV-4001, 2004 WL 345551, at *9 (S.D.N.Y. Feb. 23, 2004) (citing *Outley v. City of New York*, 837 F.2d 587, 590-91 (2d Cir. 1988)).

methodology not contained in or inconsistent with Gorsak's report, those portions will be

stricken, unless the Court is satisfied that the delay is substantially justified or harmless. *See*

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, No. 04-CV-1966, 2006 WL 44053, at *1

(S.D.N.Y. Jan. 9, 2003) (striking from expert's affidavit opinions and bases for opinions not

contained in expert report). But to the extent the Affidavit merely provides "evidentiary detail

for the opinions expressed in [his report,]" those portions can and will be considered. *See id.* at

*2; *see also Point Prods.*, 2004 WL 345551, at *9 (striking expert's affidavit where it

"expound[ed] a wholly new and complex approach," as opposed to "merely support[ing] an

initial position").[4]

## 2. Gorsak's Qualifications

Whether a proffered witness qualifies as an expert by "knowledge, skill, experience,

training, or education" is a threshold question to be determined before inquiring into the

relevance or reliability of the proffered testimony. *See Nimely*, 414 F.3d at 395 n.11 (quoting

Fed. R. Evid. 702); *see also Zaremba v. Gen. Motors Corp.*, 360 F.3d 355, 360 (2d Cir. 2004)

(finding reliability analysis "superfluous" where expert was not sufficiently qualified). "In

assessing whether a witness can testify as an expert, courts have liberally construed the expert

qualification requirement." *Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, No. 04-

---

[4]Gorsak's Affidavit sets forth a laundry list of his opinions. (Aff. of Bruce Gorsak ¶ 15 ("Gorsak Aff.").) Defendants argue that these conclusions are "completely different" from those offered by Gorsak in his expert report and, therefore, that they must be disregarded by the Court. (Defs.' Reply ¶ 9.) The Court does not read Gorsak's Affidavit as impermissibly offering new opinions. Instead, the Affidavit offers more information and elaboration on opinions previously expressed in the Gorsak Report. The only exception is Gorsak's reference to the sample instructions he drafted for the door handle installation. (Gorsak Aff. ¶ 15(f).) Because there is no indication that the existence of this sample instruction sheet was ever provided to Defendants, Plaintiffs will not be permitted to rely on it.

CV-7369, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006); *see also Keenan v. Mine Safety Appliances Co.*, No. 03-CV-710, 2006 WL 2546551, at *2 (E.D.N.Y. Aug. 31, 2006) ("The qualifications necessary to testify as an expert are minimal.").  In determining whether a proffered witness possesses the necessary qualifications to testify as an expert in a given case, the court must look at the "totality of the witness' qualifications."  *Atl. Specialty Ins. Co. v. Gold Coast Devs., Inc.*, No. 05-CV-4863, 2008 WL 974411, at *6 (E.D.N.Y. Apr. 8, 2008).

Defendants argue that Gorsak lacks the "specialized knowledge, skill, experience, education and training" necessary to render an expert opinion in this case because he:  (1) had no personal knowledge of other incidents involving instructions or warnings similar to those at issue in this case, though he claims to have relied on his own experience; (2) never studied consumer assembly instructions or warnings while obtaining his Bachelor's degree; (3) is not a licensed professional engineer and has no post-graduate education in engineering; and (4) has not published any literature or lectured on consumer instructions or warnings, nor has he drafted consumer instructions or warnings.  (Defs.' Mem. 6.)  Defendants, however, do not dispute that Gorsak has experience in the "limited area of preparing and reviewing instructions for industrial assembly."  (Defs.' Reply ¶ 25.)

Having reviewed Gorsak's CV, his deposition testimony, and his Affidavit, the Court finds that Gorsak is qualified to give expert testimony in this case on the adequacy of the assembly instructions at issue.  The Court makes this finding based primarily on Gorsak's twenty-seven years of experience in industrial engineering, a field which consists of "product review, design defects of products, process development, manufacturing, and product instructions."  (Gorsak Aff. ¶ 3.)  According to Gorsak, he "spent [twenty-seven] years working

with, evaluating, and authoring assembly instructions[,]" and in those twenty-seven years, "there

[w]as never [] a year when [he] did not work hands on with authoring or evaluating assembly

instructions." (*Id.* ¶¶ 5, 9.) Also, Gorsak has "taken classes since receiving [his] engineering

degree that were specifically related to warnings and instructions." (*Id.* ¶ 2.)[5] Although Gorsak

does not have significant experience testifying in cases of this nature, he is also not completely

new to testifying in products liability actions. (Gorsak Aff. ¶¶ 10-11; Svensson Affirm., Ex. D

(List of cases in which Gorsak has offered testimony).)[6]

Courts have held that "[a]n expert should not be required to satisfy an overly narrow test

_____

[5]Defendants argue that this claim in Gorsak's Affidavit contradicts his deposition
testimony, during which "he testified that none of his college coursework or continuing
education courses dealt with warnings or instructions to be used with *consumer* products."
(Defs.' Reply ¶ 13 (emphasis added).) Because the testimony to which Defendants refer was
limited to *consumer* products, Gorsak's Affidavit is not contradictory. In fact, consistent with
his Affidavit, Gorsak further testified that, after receiving his Bachelor's degree, he took several
courses dealing with warnings and instructions, albeit not for consumer products. (Gorsak Dep.
125-28.)

[6]In his Affidavit, Gorsak explains that he testified in a case dealing with the assembly
instructions of an ice maker, which is a kitchen appliance, (Gorsak Aff. ¶ 10), and that he offered
an expert affidavit regarding the assembly instructions for a patio chair (*id.* ¶ 11). Defendants,
pointing to Gorsak's allegedly contradictory deposition testimony, argue that the Court should
disregard the portion of his Affidavit in which he claims to have offered expert testimony about
an ice maker because "he testified that he has never provided any court testimony relating to
warnings and assembly instructions on consumer products or the safety of consumer products."
(Defs.' Reply ¶ 17.)
While the Court has reviewed the testimony to which Defendants are referring (Gorsak
Dep. 114-15), the Court also notes where Gorsak corrected himself in the course of giving that
same testimony: "Q: Have you right up until today been retained with respect to any issue
relating to consumer products in the kitchen other than this case? A: No – yes. I'm sorry, yes."
(*Id.* 115.) Gorsak then proceeded to describe the nature of his role in the ice maker litigation,
which appears to have included his analysis of the ice maker's instructions. (*Id.* 115-16 ("Q: But
those instructions were okay in your opinion? A: The instructions were okay.").) Therefore, in
assessing his qualifications to offer expert testimony in this case, it is appropriate to consider the
fact that he has testified before in a products liability action concerning an ice maker.

of his own qualifications." *Johnson & Johnson Vision Care*, 2006 WL 2128785, at *5 (internal

quotation marks omitted). This Court recognizes – as do the Parties – that Gorsak does not have

much, if any, experience preparing instructions for consumer products in particular, but he does

have experience drafting instructions for industrial assembly and temporary workers, some of

whom had no prior assembling experience. (Gorsak Aff. ¶ 5; Gorsak Dep. 192.)[7] However,

given the liberality with which courts approach the issue of expert qualifications, Gorsak's vast

experience evaluating and drafting assembly instructions in general qualifies him to testify as an

expert on the adequacy of assembly instructions in this case, even if he does not have significant

experience in the particular area of consumer instructions. *See Zyprexa Prods. Liab. Litig.*, 489

F. Supp. 2d at 282 ("If the expert has educational and experiential qualifications in a general

field closely related to the subject matter in question, the court will not exclude testimony solely

---

[7]Gorsak claims, in his Affidavit, that over the course of his twenty-seven years as an industrial engineer, "[he] personally prepared instruction sheets that accompany component assemblies . . . . These instructions would accompany the component part in the same packaging that the component part came in. These instructions for the component parts were for the use [of] the installer and/or consumer." (Gorsak Aff. ¶ 6.) Gorsak explained that certain instruction sheets, such as the one at issue in this case, have come with a component part and are "more likely to be used by an installer," though they could have been used by the end user of the product. (*Id.* ¶ 7.) Gorsak also stated that he has prepared instruction sheets of this type on approximately ten occasions. (*Id.*) Defendants argue that these assertions are contrary to testimony Gorsak provided during his deposition, and therefore should be ignored by the Court. (Defs.' Reply ¶¶ 14-15.)

The Court has reviewed Gorsak's deposition testimony and does not find it to be inconsistent with his Affidavit. Though Gorsak testified that he did not write instructions for the public in general (Gorsak Dep. 195), or instructions to be included with a finished product sold to a consumer (*id.* 197), he did testify that he had "possibly" been involved in the preparation of instruction sheets that would or could be used by a consumer in the home (*id.* 65). He explained that such instructions, which he prepared at least ten times, were for component assemblies, which "may or may not go to a consumer." (*Id.* 66-68.) Gorsak admitted, however, that he was not involved with such instruction sheets "near[ly] as often as the manufacturing instruction sheets." (*Id.* 67.)

on the ground that the witness lacks expertise in the specialized areas that are directly pertinent."); *Santoro v. Donnelly*, 340 F. Supp. 2d 464, 473 (S.D.N.Y. 2004) ("The question is not whether the engineer is an expert on the exact issues presented in the case, but rather, whether his general engineering experience qualifies him to testify in an area in which he does not have extensive expertise."); *see also Stagl v. Delta Air Lines*, 117 F.3d 76, 82 (2d Cir. 1997) (finding proffered expert qualified to testify as to the safety of the baggage claim area of an airline though expert had no expertise in airline terminal or baggage claim area design, because proffered expert had expertise in human-machine interactions); *Humphrey*, 556 F. Supp. 2d at 176 (finding proffered expert qualified to testify regarding power saws because of his "generalized engineering education and experience, combined with his specific work with machine guarding," though he had no prior experience with power saws in particular).

The Court also is unpersuaded by Defendants' argument that Gorsak fails to qualify as an expert because, while he holds a Bachelor's degree in Mechanical Engineering Technology, he does not hold a professional engineering license and did not receive a post-graduate education in engineering. In fact, it is well-settled that, to be an expert, a person need not hold a particular degree or license. Indeed, it is not uncommon for a person to qualify as an expert based on his or her experience alone. *See Johnson & Johnson Vision Care*, 2006 WL 2128785, at *5 (explaining that a witness can qualify as an expert based solely on practical experience, and not educational background, and vice versa); *Point Prods.*, 2004 WL 345551, at *5 (finding proffered expert qualified based on his work and experience). The Court finds that Gorsak's significant practical experience working as an industrial engineer, specializing in assembly operations, more than makes up for any lack of post-graduate engineering education in this area.

Moreover, the facts that Gorsak has no post-graduate degree in engineering and that he lacks experience in the particular area of consumer products go to the weight, and not the admissibility, of his testimony and can be properly explored on cross-examination. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (allowing expert testimony and stating that any "quibble with [the expert's] academic training . . . and his other alleged shortcomings . . . were properly explored on cross-examination and went to his testimony's weight and credibility – not its admissibility"); *Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d at 282 ("Assertions that the witness lacks particular educational or other experiential background, go to the weight, not the admissibility of [the] testimony." (internal quotation marks omitted)).

In sum, the Court finds that Gorsak is qualified to offer expert testimony as to the adequacy of the assembly instructions at issue in this case.

### 3. Reliability of Gorsak's Proffered Testimony

It is the responsibility of a trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 589 (1993). The Supreme Court has made clear that this responsibility applies not only to scientific testimony, but also to testimony based on technical or other specialized knowledge. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) ("We . . . believe that [this basic gatekeeping obligation] applies to all expert testimony."). "While an engineering expert in a product liability case is not strictly confined to his area of practice and may testify concerning related applications, he or she is not exempt from the requirement of providing a sufficient basis for his or her conclusions." *Bah v. Nordson Corp.*, No. 00-CV-9060, 2005 WL 1813023, at *10 (S.D.N.Y. Aug. 1, 2005) (internal citations and quotation marks omitted).

In assessing the reliability of proffered expert testimony, the court must "'focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions.'" *Alfa Corp.*, 475 F. Supp. 2d at 360 (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). An expert's employed methodology and conclusions are not, however, "entirely distinct from one another[;]" in fact, expert testimony can be excluded if the court determines that there is "simply too great an analytical gap between the data and the opinion proffered." *Id.* at 360-61 (internal quotation marks omitted); *accord Nimely*, 414 F.3d at 396-97 (noting that the district court must ensure that there exists a "sufficiently rigorous analytical connection between that methodology and the expert's conclusions"). In fact, "'when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the opinions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony.'" *Nimely*, 414 F.3d at 396-97 (quoting *Amorgianos*, 303 F.3d at 266).

In *Daubert*, the Supreme Court set forth the following factors that district courts may consider in determining the reliability of the methodology used by a proffered expert: (1) whether the theory or technique can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the technique has a known or potential rate of error; and (4) whether the theory or technique has been met with widespread acceptance. *See* 509 U.S. at 593-94. The Supreme Court has emphasized that the Rule 702 inquiry is "a flexible one," *id.* at 594, and that "a trial court *may* consider one or more of the more specific factors that *Daubert* mentioned[, but that] *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case," *Kumho Tire Co.*, 526 U.S. at 141. Indeed,

"the trial judge has 'the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether* that expert's relevant testimony is reliable.'" *Zaremba*, 360 F.3d at 358 (quoting *Kumho Tire*, 526 U.S. at 152).

Defendants argue that, even if Gorsak is qualified to offer expert testimony in this case, his testimony should nonetheless be excluded because he employed an unreliable methodology in arriving at his conclusions.[8] Specifically, Defendants argue that Gorsak failed to conduct appropriate tests, did not have his opinions validated by peer review, has not identified any rule or code violated by Defendants' assembly instructions or warnings, and did not find any indication in the Consumer Product Safety Commission database of a defect or deficiency in the door handle or assembly instructions at issue in this case. (Defs.' Mem. 9-10.)[9] In sum, Defendants argue that "[t]he lack of calculations, testing, or supporting research material renders it nearly impossible to discern precisely what Gorsak's methodology in coming to his conclusion was." (*Id.* 10.)

---

[8]Defendants also argue that Gorsak's testimony must be excluded because his conclusions are actually inconsistent with Plaintiff Mark Emig's version of how he was injured. (Defs.' Mem. 10.) Defendants, however, cite no authority for this proposition that an expert's testimony should be excluded if certain aspects of it arguably do not help the case of the party by whom the expert was hired.

[9]Defendants also argue that Gorsak's testimony should be precluded because he was unable to identify any difference between the instructions at issue and the competitors' instructions that he examined. (Defs.' Mem. 10.) This argument, however, is an attack on Gorsak's conclusions, the accuracy of which are not at issue for present purposes. *See Alfa Corp.*, 475 F. Supp. 2d at 360, 367 (stating that the court must "focus on the principles and methodology employed by the expert, without regard to the conclusions the expert has reached or the district court's belief as to the correctness of those conclusions" and finding complaints about expert's comparisons to others as addressing the weight, not the admissibility, of expert testimony (internal quotation marks omitted)). Moreover, this is more properly viewed as fodder for cross-examination.

In response, Plaintiffs argue that many – if not all – of the *Daubert* factors are irrelevant in the present case because "[t]he facts of this case are simple as opposed to highly technical," that Gorsak's experience alone can provide the basis for his expert opinion and testimony in this case, and that, in any event, his methodology was reliable.[10]  (Pls.' Mem. of Law 8-9, 11, 15-17 ("Pls.' Mem.").)

The Court agrees with Plaintiffs that – in many respects – Gorsak's expert report and opinion are not easily analyzed using the *Daubert* factors.  As noted above, the Supreme Court has made clear that the *Daubert* factors are only to be applied where it makes sense to do so.  *See Kumho Tire*, 526 U.S. at 151-52.  There is no clear application of the *Daubert* factors as the *Daubert* factors do not fit easily in a case like this one, where Gorsak and Defendants' experts relied primarily, if not solely, on their experience in forming their respective opinions.  *See Liriano v. Hobart Corp.*, 949 F. Supp. 171, 177 (S.D.N.Y. 1996) ("Properly understood, the *Daubert* analysis applies to cases involving unique, untested, or controversial methodologies or

_____

[10]In his Affidavit, Gorsak, denying that his opinion was based solely on his experience, set forth what he did to arrive at his expert opinion.  (Gorsak Aff. ¶ 13.)  Defendants argue that certain parts of this asserted methodology contradict his expert report and should be precluded. (Defs.' Reply ¶¶ 21-22.)  In particular, Defendants object to Gorsak's claim that he:  (1) inspected the refrigerator at the scene of the accident (Gorsak Aff. ¶ 13(a)); (2) reviewed and analyzed competitors' handles (*id*. ¶ 13(g)); (3) "mocked" the installation of the handle at issue, as well actually installed the handle on exemplars (*id*. ¶ 13(j)); and (4) drafted his own set of instructions for assembly of the door handle at issue (*id*. ¶ 13(l)).

Fed. R. Civ. P. 26(a)(2)(B) requires that an expert report contain "the data or other information considered by the witness in forming [his or her opinion]."  Because, without explanation, there is no evidence suggesting that Gorsak ever before disclosed that he installed door handles on exemplars or that he drafted his own set of assembly instructions – and discovery has been closed for some time – the Court strikes those portions of his Affidavit.  The remainder of the objected-to methodology is entirely consistent with Gorsak's report, and, if anything, merely provides "evidentiary detail for the opinions expressed in [his report]."  *See Takeda Chem. Indus.*, 2006 WL 444053, at *2.

techniques. It is not appropriate to invoke the *Daubert* test in cases where expert testimony is

based solely on experience or training, as opposed to a methodology or technique." (internal

citation omitted)).[11]  Indeed, where the expert's opinion is based on "years of accumulated

learning and insight," the reliability of such opinion "should be assessed without resort to the

*Daubert* factors." *See id*. at 178.  This does not mean that there are no instances in which

experience-based opinions can be reasonably evaluated with reference to the *Daubert* factors.

*See Kumho Tire Co.*, 526 U.S. at 151.  In light of these principles, the Court will not preclude

Gorsak's expert testimony due to his failure to satisfy any or all of the *Daubert* factors, though

Defendants are free to explore any such shortcomings on cross-examination.  That being said,

and keeping in mind the presumption in favor of the admissibility of evidence, the Court still

must be satisfied that Gorsak's opinion is reliable enough to present to a jury.  *See Bah*, 2005

WL 1813023, at *7.

Though a proffered expert may "draw a conclusion from a set of observations based on

extensive and specialized experience," *Kumho Tire Co.*, 526 U.S. at 156, a proffered expert who

relied solely on his or her experience in arriving at his or her expert opinion must have based that

opinion on sufficient facts or data, and "'must explain how that experience leads to the

conclusion reached, why that experience is a sufficient basis for the opinion, and how that

---

[11]The Parties disagree as to whether Gorsak's opinion is based on his experience alone or whether it was based on some other methodology.  (Defs.' Reply ¶¶ 18-19; Gorsak Aff. ¶¶ 13-14.)  As the Court reads the Parties' submissions, it is clear that this disagreement revolves more around semantics than anything else.  The Parties do not dispute that Gorsak's opinion was based on a combination of his experience with assembly instructions, his comparison of competitors' instructions, and his investigation of Plaintiff Mark Emig's accident (though the Parties disagree considerably as to the extent of this investigation).  In any event, it is apparent that Gorsak did not undertake a highly scientific or technical analysis of the instructions, making the *Daubert* factors less relevant.

experience is reliably applied to the facts,' because 'the trial court's gatekeeping function requires more than simply taking the expert's word for it.'" *Bah*, 2005 WL 1813023, at *9 (quoting Fed. R. Evid. 702 advisory committee's note). Indeed, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.* (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

The Court concludes that Gorsak's report and opinions are sufficiently reliable under Rule 702's liberal standards to permit his expert testimony in this case. In forming his opinion, Gorsak relied on his extensive experience in the area of assembly instructions to analyze the instructions at issue and compare them to instructions included with competitors' products. He also performed two site inspections, during which he "mocked" the handle installation and interviewed Plaintiff Mark Emig. *Cf. Humphrey*, 556 F. Supp. 2d at 177 (admitting expert engineering testimony in products liability case where expert's methodology included inspection and testing of product, comparison to competitors' products, and interview with plaintiff). According to Gorsak, this "methodology" was the same one he "utilized in the 'real world' of American Industry when [he] evaluated and authored assembly instructions," (Gorsak Aff. ¶ 14), demonstrating a connection between his experience and the process he used and the conclusions he reached. *See Bah*, 2005 WL 1813023, at *9.

The Court also has reviewed the expert reports of Defendants' experts, Jane Welch and Dennis Brickman ("Brickman"), to gauge the "level of intellectual rigor that characterizes the practice of [] expert[s] in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. Brickman based his opinion on his "education, background, experience, view of [listed] documents . . . , and []

inspection of an exemplar Frigidaire refrigerator." (Brickman Report 12.) According to her report, Welch's opinion was based on her "education, experience, research in the field of safety information and communication of warnings, and review of [Gorsak's CV and report, Plaintiffs' interrogatory responses, and Plaintiffs' deposition]." (Welch Report 1-2.) The Court finds it significant that, in many respects, Gorsak relied on the same things – his experience, the instructions at issue, competitors' instructions, and an inspection of the refrigerator – in arriving at his opinions that Defendants' experts did. In fact, Gorsak's methodology appears, therefore, to be "of a kind that others in the field would recognize as acceptable," which would satisfy the fourth *Daubert* factor. *See Figueroa v. Boston Scientific Corp.*, 254 F. Supp. 2d 361, 365 (S.D.N.Y. 2003) (citing *Daubert*). To the extent that Defendants' experts went above and beyond Gorsak in terms of research, testing, or analysis, Defendants may present those disparities at trial.

Though Gorsak arguably could have done more to test the adequacy of the instructions and could have provided more support and detail for the conclusions he reached, the Court will not preclude his testimony on those grounds. *See Alfa Corp.*, 475 F. Supp. 2d at 366 (permitting expert testimony where support for expert opinion was "somewhat thin," but "not so weak as to be simply inadequate to support the conclusions reached" (internal quotation marks omitted)). Instead, any such alleged failures in Gorsak's methodology go to the weight of his expert testimony, not its admissibility in the first instance. *See Figueroa*, 254 F. Supp. 2d at 368 (allowing proffered expert's opinion based on his experience, education, and knowledge alone, and finding that any argument about the lack of testing or data or textual support for his opinion implicates the weight, and not the admissibility, of his testimony). Defendants will have plenty

of opportunity to cross-examine Gorsak on everything he did and did not do in reaching his conclusions. *See Zyprexa Prods. Liab. Litig.*, 489 F. Supp. 2d at 282 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence, and are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." (internal quotation marks omitted)); *Alfa Corp.*, 475 F. Supp. 2d at 360 ("'[O]ur adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony.'" (quoting *Amorgianos*, 303 F.3d at 267)).

In sum, the Court finds Gorsak's methodology sufficiently reliable to permit his expert testimony in this case.

### 4. Summary Judgment

Having denied Defendants' Motion to Preclude Plaintiffs' expert, it is not necessary for the Court to spend much time on Defendants' Motion for Summary Judgment, which Defendants argued would be appropriate "[i]f the Court . . . excludes testimony of plaintiffs' expert . . . ." (Defs.' Mem. 11.) Gorsak's report and testimony create a disputed issue of fact as to whether the assembly instructions at issue were adequate and whether they caused Plaintiff's injury. Therefore, Defendants' Motion for Summary Judgment is DENIED.

## III. Conclusion

For the reasons stated herein, Defendants' Motions are DENIED. The Clerk of Court is respectfully directed to terminate the pending Motion (Dkt. No. 20).

SO ORDERED.

Dated:     September 10, 2008
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List by ECF:

John F. Scarzafava, Esq.
Scarzafava & Basdekis
48 Dietz Street, Suite C
Oneonta, NY 13820
Email: scarzafavalaw@yahoo.com

Robert P. Ianelli, Esq.
1436 Route 52
Suite 1
Fishkill, NY 12524

George S. Hodges, Esq.
Paul E. Svensson, Esq.
Hodges, Walsh & Slater, L.L.P.
75 South Broadway
White Plains, NY 10601
Email: ghodges@hwslaw.com
psvensson@hwslaw.com